*Nastasi & Assocs. v. Bloomberg et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 27th day of July, two thousand twenty-six.

PRESENT:
> PIERRE N. LEVAL,
> RICHARD C. WESLEY,
> RICHARD J. SULLIVAN,
> *Circuit Judges*.

---

NASTASI & ASSOCIATES, INC.,

      *Plaintiff-Appellant*,

      v.               No. 24-545

BLOOMBERG, L.P., TURNER CONSTRUCTION COMPANY, EUROTECH CONSTRUCTION CORP., DONALDSON ACOUSTICS CO., INC., MARILYN FRANCISCO, ANTHONY GUZZONE, WILLIAM DALE SUMMERVILLE, LAUREN

ECKHART SMITH, MICHAEL CAMPANA, VITO NIGRO, FAY DEVLIN, DUANE ROBERT DONALDSON, DOUGLAS DONALDSON, DOES 1-50, AND JAVIER PAULINO,

*Defendants-Appellees,*

RONALD OLSON,

*Defendant.*

---

| | |
|---|---|
| **For Plaintiff-Appellant:** | Thomas Michael Kenny, David Butler Harrison, Spiro Harrison & Nelson, New York, NY. |
| **For Defendants-Appellees Bloomberg, L.P., William Dale Summerville, and Lauren Eckhart Smith:** | Allan Noel Taffet, Joshua C. Klein, Bracewell LLP, New York, NY. |
| **For Defendant-Appellee Turner Construction Company:** | Keith Blackman, Akerman LLP, New York, NY; Thomas J. Curran, Doris D. Short, Robert Bell, Duane Morris LLP, New York, NY. |
| **For Defendants-Appellees Donaldson Acoustics Co., Inc., and Duane Robert Donaldson:** | Edward M. Spiro, Joshua P. Bussen, Morvillo Abramowitz Grand Iason & Anello P.C., New York, NY. |
| **For Defendant-Appellee Douglas Donaldson:** | Eric P. Franz, Law Offices of Eric Franz, Carle Place, NY. |
| **For Defendants-Appellees Eurotech Construction Corp. and Fay Devlin:** | Gerard Keogh, Keogh Law Group, PLLC, New York, NY. |
| **For Defendant-Appellee Javier Paulino:** | Jonathan M. Cooper, Law Offices of Jonathan M. Cooper, Cedarhurst, NY. |

2

| | |
|---|---|
| **For Defendant-Appellee Anthony Guzzone:** | Aaron H. Pierce, Pierce & Kwok LLP, New York, NY. |
| **For Defendant-Appellee Marilyn Francisco:** | *Pro se*, Hillsdale, NJ. |
| **For Defendant-Appellee Michael Campana:** | *Pro se*, Chappaqua, NY. |
| **For Defendant-Appellee Vito Nigro:** | *Pro se*, Danbury, CT. |

Appeal from a judgment of the United States District Court for the Southern District of New York (Jesse M. Furman, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the February 15, 2024 judgment of the district court is **AFFIRMED**.

Nastasi & Associates, Inc. ("N&A"), a construction subcontractor, appeals the district court's grant of summary judgment in favor of Defendants – Bloomberg, L.P. ("Bloomberg"), Turner Construction Co. ("Turner"), Eurotech Construction Corp. ("Eurotech"), Donaldson Acoustics, Co., Inc. ("Donaldson Acoustics"), and various individuals employed by those companies – on N&A's federal antitrust and racketeering claims. N&A additionally challenges the district court's award of sanctions related to its misconduct during discovery. We assume

the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision.

## I.      The District Court Did Not Err in Concluding That N&A's Claims Were Barred by the Statute of Limitations.

N&A first contends that the district court erred in finding that its federal claims were time barred. "We review *de novo* a district court's decision to grant summary judgment, construing the evidence in the light most favorable to the party against whom summary judgment was granted and drawing all reasonable inferences in that party's favor." *Bey v. City of New York*, 999 F.3d 157, 164 (2d Cir. 2021). Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We review a district court's application of the relevant statute of limitations *de novo*, *Somoza v. N.Y.C. Dep't of Educ.*, 538 F.3d 106, 112 (2d Cir. 2008), and its decision "to deny equitable tolling for abuse of discretion," *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 157 (2d Cir. 2012) (internal quotation marks omitted).

### A. Antitrust Claims.

"Private antitrust claims are 'forever barred' if not brought 'within four years after the cause of action accrued.'" *Phhhoto Inc. v. Meta Platforms, Inc.*,

4

123 F.4th 592, 603 (2d Cir. 2024) (quoting 15 U.S.C. § 15b). A cause of action for a private antitrust violation accrues "when a defendant commits an act that injures a plaintiff's business." *Id.* (internal quotation mark omitted).

Here, the act that allegedly injured N&A's business occurred in 2011, when Defendants rejected N&A's bids and awarded the contracts to other bidders in exchange for bribes. But N&A did not file suit until July 14, 2020, more than nine years after the wrongful act alleged – and long after the limitations period had run. *See* 15 U.S.C. § 15b. Accordingly, N&A's antitrust claims are presumptively time barred unless subject to equitable tolling.

We have held that the four-year time bar on federal antitrust claims may be equitably tolled only in "rare and exceptional circumstances." *Phhhoto Inc.*, 123 F.4th at 603 (alteration adopted and internal quotation marks omitted). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *see also A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 144 (2d Cir. 2011).

The record makes clear that, by mid-2011, Plaintiff was aware of Defendants' bid-rigging. On July 7, 2011, Anthony Nastasi, the CEO and owner of N&A, emailed Anthony Guzzone, a Bloomberg employee responsible for bids at Bloomberg Properties, that he was "greatly disappointed . . . at the fact that [he] was the legitimate low bidder but somehow the #'s changed at the last minute and [he] lost the job by 10k [dollars]." J. App'x at 1581. The next day, Nastasi again emailed Guzzone, this time asserting that "I know when I'm not playing [o]n a level field . . . and I will not be bidding any further work on this project . . . . I appreciated your kind words but I'm rarely wrong about these things!" *Id.* at 1561. As Nastasi explained in a later deposition, he had sent that email because he "had guys feeding [him] back information telling [him] what they were doing." *Id.* at 1562. And in a sworn affidavit from 2019, Nastasi asserted that he had "several conversations" with Guzzone in 2011 in which he "alerted Guzzone to the fact that Turner Construction was purposely manipulating bids." *Id.* at 1563.[1] Despite this knowledge, N&A did not bring suit until 2020.

---

[1] Guzzone was subsequently prosecuted for participating in a bid-rigging scheme in connection with Bloomberg construction projects. He eventually pleaded guilty to one count of attempted tax evasion and was sentenced to a term of thirty-eight months' imprisonment. *See United States v. Guzzone*, No. 20-cr-0354 (LJL), 2021 WL 5417436, at *2 (S.D.N.Y. Nov. 18, 2021).

Because N&A did not exercise the diligence required for equitable tolling, *see Pace*, 544 U.S. at 418, the district court properly declined to equitably toll N&A's federal antitrust claims. They are therefore time barred.

**B. Civil RICO Claims.**

N&A's claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c) and (d), are likewise time barred. Civil RICO claims are subject to a four-year statute of limitations, *Rotella v. Wood*, 528 U.S. 549, 552 (2000), which begins to run "when the plaintiff discovers or should have discovered the RICO injury," *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 58 (2d Cir. 1998). A plaintiff is on inquiry notice for a civil RICO injury when there are "storm warnings" that "should have prompted an inquiry." *Koch*, 699 F.3d at 151 (internal quotation marks omitted). Storm warnings need not detail "every aspect of the alleged fraudulent scheme"; instead, they need only raise concerns such that "a person of ordinary intelligence would consider it *probable* that fraud had occurred." *Id.* (internal quotation marks omitted and emphasis added).

The record here leaves little doubt that N&A was on inquiry notice of its alleged RICO injury by 2011. For starters, Nastasi voluntarily spoke with prosecutors at the Manhattan District Attorney's Office in August 2010 about

extortion, bribery, and "pay to play" in the New York City construction industry. J. App'x at 1496–97, 1565. In a July 2011 email to Guzzone, Nastasi explicitly shared strong suspicions that Bloomberg was taking bribes when awarding construction contracts. *See id.* at 1561 ("You can't tell me that someone isn't playing around. I've been in this game way too long not to recognize the problem."). He added that he would "not be bidding on any further work . . . when Turner [Construction] is gonna do what they want to do and Bloomberg sits by and allows it." *Id.* (alterations adopted). Relying on his experience in the industry, Nastasi further explained that he is "rarely wrong about these things!" *Id.* at 1561. In response, Guzzone told Nastasi to "give me a reason to do something about this," *id.* at 1970 – a clear invitation to counter Turner's bribe with one of his own. Such an exchange surely constituted a "storm warning" that "should have prompted an inquiry" by N&A. *Koch*, 699 F.3d at 151 (internal quotation marks omitted). And that warning gave way to actual knowledge in April 2015, when Fay Devlin, the CEO of Defendant Eurotech, bluntly "advised Nastasi that a bribe was the cost of doing business with Bloomberg and Turner"

and confided to Nastasi that "you've got to take care of Javier Paulino in order to keep those jobs." J. App'x at 83, 98.[2]

Notwithstanding these clear signs of bribery and bid-rigging, N&A argues that it was entitled to rely upon assurances from Nastasi's "close friends" at Bloomberg and Turner who denied all wrongdoing and assured him that N&A was losing bids due to internal politics rather than bid-rigging. N&A Br. at 19. But as we have previously explained, "reassuring statements will prevent the emergence of a duty to inquire or dissipate such a duty only if an investor of ordinary intelligence would reasonably rely on the statements to allay" his concern. *LC Cap. Partners, LP v. Frontier Ins. Grp., Inc.*, 318 F.3d 148, 155 (2d Cir. 2003). Given the numerous statements that Nastasi made in 2010–11 indicating that he believed N&A was losing bids due to corruption and bid-rigging – not to mention Guzzone's solicitation of a bribe from N&A and Devlin's 2015 explicit acknowledgment that Nastasi would have to bribe Paulino to win a Bloomberg contract – it was not reasonable for Nastasi to rely on assurances from "close friends" at Bloomberg and Turner that no wrongdoing was taking place. On this

---

[2] Javier Paulino was a Bloomberg employee responsible for evaluating the bids submitted in connection with construction projects at Bloomberg properties. Paulino later pleaded guilty to taking bribes and embezzling more than $1,000,000 in connection with Bloomberg construction projects. *See* J. App'x at 51.

record, we cannot say that the district court erred in concluding that N&A's civil RICO claims were time barred.[3]

## II. The District Court Did Not Abuse Its Discretion in Imposing Discovery Sanctions on N&A.

N&A also challenges the district court's sanctions order and award of "reasonable attorney's fees and costs related to the litigation of Defendants' sanctions motion." Sp. App'x at 17–18. "We review the imposition of sanctions for abuse of discretion," *Liebowitz v. Bandshell Artist Mgmt.*, 6 F.4th 267, 280 (2d Cir. 2021) (internal quotation marks omitted), disturbing the district court's decision only if it "rests on an error of law or a clearly erroneous factual finding, or its decision cannot be located within the range of permissible decisions," *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010) (alterations adopted and internal quotation marks omitted).

Here, the district court sanctioned N&A for two types of discovery misconduct:  (i) destroying "nearly all of [its] books and records in December 2015" and failing to preserve its employees' emails and Nastasi's text messages; and (ii) failing to disclose and produce a letter written by Nastasi referencing his

---

[3] N&A asserted various state-law claims below, which the district court declined to address after dismissing the federal claims. *See* 28 U.S.C. § 1367. Because N&A does not challenge that decision on appeal, the argument is abandoned. *See Cruz v. Gomez*, 202 F.3d 593, 596 n.3 (2d Cir. 2000). We therefore affirm the dismissal of those state-law claims as well.

awareness of bid-rigging by Defendants as early as 2010, which was filed in an unrelated litigation. Sp. App'x at 15. We address each in turn.

## A. Sanctions for Spoliation

"Spoliation is the destruction or significant alteration of evidence, or failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.*, 473 F.3d 450, 457 (2d Cir. 2007) (internal quotation marks omitted). "The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001). "Even without a discovery order, a district court may impose sanctions for spoliation, exercising its inherent power to control litigation," *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999), so long as those sanctions are "compensatory rather than punitive in nature," *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108 (2017).

It is undisputed that Nastasi (i) made the decision to "turn off" – and therefore render unretrievable – the emails of all N&A employees in May 2015; (ii) tossed N&A's hard-copy files into a rented dumpster in December 2015; and

11

(iii) failed to preserve his texts. Sp. App'x. at 15–17; *see also* J. App'x at 1572–1574 ¶¶ 83-93. And he did so at a time when litigation was clearly on the horizon. Indeed, N&A's general counsel had emailed Bloomberg and Eurotech in April 2015 to threaten litigation, stating that N&A intended to hold them liable for "any and all compensatory, consequential[,] and punitive damages permitted by law" resulting from the two corporations "wrongfully conspiring and stealing our employees, wrongfully terminating our contract[,] and wrongfully interfering with [N&A's] contractual rights." J. App'x at 1570.

Because N&A disregarded its obligation to preserve relevant evidence and intentionally destroyed "documents, files, and equipment" while in a "virtual storm of litigation," Sp. App'x at 17, the district court acted well within "its inherent power to control litigation," *West*, 167 F.3d at 779, by awarding Defendants reasonable attorney's fees and related costs incurred in litigating the spoliation issue. *See Goodyear Tire & Rubber Co.*, 581 U.S. at 108. Accordingly, we find no error in the district court's decision to impose sanctions on N&A.

## B. Sanctions for Failure to Produce Documents

N&A next contends that the district court erred in awarding Defendants "costs incurred in locating and procuring," Sp. App'x at 19, a signed and notarized

letter (the "2021 Admission") that Nastasi had written and submitted in connection with an Article 78 petition in New York state court challenging the denial of his pistol license, but which N&A failed to produce during discovery. J. App'x at 1586–87. In the 2021 Admission, Nastasi stated that he had spoken with the Manhattan District Attorney's Office in August 2010 about Bloomberg and Turner engaging in a "pay[-]to[-]play" scheme. *Id.* at 1587. N&A argues that it had no obligation to produce the letter because it was publicly filed and "available for anyone to access . . . through the New York State Electronic Filing System." N&A Br. at 39. We disagree.

Nothing in the text of the Federal Rules of Civil Procedure suggests that a relevant and unprivileged document is exempt from production because an opposing party could have accessed it independently. Litigants are not required to exhaustively search all publicly available sources – including the free-to-access dockets of a distinct proceeding involving Nastasi – before making a discovery demand upon an adversary. Such a requirement would impose an unreasonable burden on litigants and encourage the very sort of gamesmanship that the Federal Rules were designed to avoid. *See Schlesinger Inv. P'ship v. Fluor Corp.*, 671 F.2d 739, 742 (2d Cir. 1982) ("The [F]ederal [R]ules evince a liberal policy with regard

13

to discovery in order to allow litigants to secure helpful evidence from the hands of their adversaries."); *see also Hickman v. Taylor*, 329 U.S. 495, 501 (1947) (explaining that Rules 26 through 37 allow "for the parties to obtain the fullest possible knowledge of the issues and facts before trial"); *Shatsky v. Syrian Arab Rep.*, 312 F.R.D. 219, 223–24 (D.D.C. 2015) ("The Federal Rules do not shield publicly available documents from discovery merely because of their accessibility.").

It is undisputed that N&A failed to produce the 2021 Admission, which was a nonprivileged and relevant document in its possession, custody, or control. *See* Fed. R. Civ. P. 26(b), 34(a)(1). And it is well established that "a district court has wide discretion in sanctioning a party for discovery abuses" – such as withholding a document that should have been produced – whether it is "exercising its inherent power, or acting pursuant to Rule 37." *Reilly v. Natwest Mkts. Grp.*, 181 F.3d 253, 267 (2d Cir. 1999). Accordingly, we find that the district court did not abuse its discretion in awarding Defendants' costs – totaling $80,000 to Bloomberg and $80,000 to Turner – incurred in procuring the unproduced documents and litigating the sanctions motion.

\* \* \*

We have considered N&A's remaining arguments and find them to be without merit.  Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court